In the Matter of James W.
THAYER, Debtor.

Bankruptcy No. MM7–82–01441.

United States Bankruptcy Court,
W.D. Wisconsin.

Nov. 9, 1982.

Joel Bruce Winnig, Madison, Wis., for debtor.

John L. Schwab, Atty., Bosshard, Sundet & Assoc., La Crosse, Wis., for Sabina Bosshard and Karen Hutchinson.

### DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

On October 29 a hearing was held on the order directing that Mrs. Karen Hutchinson, former wife of the debtor, and her attorney, Sabina Bosshard show cause why they should not be found in contempt of this court for violating provisions of 11 U.S.C. § 362 by moving the Circuit Court for Monroe County, Wisconsin, to enforce its contempt order against the debtor after this case had been filed. Sabina Bosshard and Karen Hutchinson appeared at the hearing represented by John Schwab of Bosshard, Sundet & Associates, and the debtor James W. Thayer appeared represented by Joel B. Winnig. Upon the evidence taken at that hearing and upon the whole record in this case, the court will issue an order of contempt, for the following reasons:

On July 26, 1982 the Honorable James W. Rice, Circuit Judge, found the debtor to have intentionally disobeyed the judgment of the Circuit Court for Monroe County by failing to pay the amount owed Karen Hutchinson pursuant to the judgment of divorce previously entered. Judge Rice committed the debtor to 90 days in the Monroe County jail but stayed that commitment until August 30, 1982 to allow the debtor to purge himself by payment of the $912 in back child support and $2,450 in delinquent property settlement payments.

The debtor had made no payments of the property settlement when he filed this case in bankruptcy on August 19, 1982. Notice of the bankruptcy filing was provided to Hutchinson and Attorney Bosshard on or about August 27, 1982. On or about September 26, 1982 Attorney Bosshard made inquiry of Judge Rice to determine whether the debtor had been committed to jail. Upon learning he had not and that the judge would take no action without a hearing, Attorney Bosshard prepared and filed a motion to terminate the stay of commitment specifying as grounds that the debtor had failed to purge himself by payment of $2,450 of delinquent property settlement. A hearing on the motion was held on October 1, 1982 at 3:30 p.m. Attorney Gregory Lunde appeared for the debtor and advised the court that no notice of the hearing had been given to the debtor. At the hearing Judge Rice heard evidence that although

past support arrearages had been paid, the most recent payment was overdue. The judge then found the debtor to be in contempt for failing to pay $143 in support and took under advisement whether there was a contempt as to the $2,450 of unpaid property division. The judge issued a bench warrant for the debtor's arrest providing that if payment of the $143 and $75 in cost were made, the debtor would be released. Judge Rice subsequently on October 26, 1982 ordered that the debtor would not be jailed for contempt for failing to pay the property division because his bankruptcy would discharge that obligation.

The issue before this court is whether Attorney Bosshard and her client violated 11 U.S.C. § 362(a)(1) or (2) by seeking enforcement of the punishment for contempt imposed prior to bankruptcy but stayed until after bankruptcy. The respondents defend their actions as being merely the invocation of the state court's proper jurisdiction to protect its integrity by punishing contempts taking place before it. The debtor alleges that the primary purpose, however, was to collect an otherwise dischargeable debt.

Respondents' principal support comes from the case of *In Re Dumas,* 19 B.R. 676, 8 B.C.D. 1314, 6 C.B.C.2d 472 (Bkrtcy.App. 9th Cir.1982). In that case, the Bankruptcy Appellate Panel for the Ninth Circuit found it appropriate for creditors to move a state court, after the filing of a debtor's petition, to have the court impose contempt penalties against a debtor who failed to respond to orders for appearance at a supplemental proceeding commenced by the creditors. In writing the *Dumas* opinion Judge Hughes carefully analyzed the propriety of the court's exercise of jurisdiction and concluded on the basis of prior cases in which bankrupts had been found in contempt for refusal to obey discovery orders [1] that the state court's holding of contempt was an appropriate exercise of its jurisdiction. Judge Hughes concluded that because the court exercised its jurisdiction appropriately it should make no difference who initiated that exercise of jurisdiction, and stated "the state court's sentence for contempt after bankruptcy for disobeyance of the subpoena before bankruptcy was not affected by the automatic stay of 11 U.S.C. § 362 even if it were imposed at the request of [the creditor] Atwood." 19 B.R. at 678, 8 B.C.D. at 1316, 6 C.B.C.2d at 475.

The debtor suggests that *Dumas* should be distinguished from the present case because in *Dumas* the debtor's contempt was a failure to respond to a subpoena whereas in the present case Thayer's contempt was the failure to pay a debt. We have found no case in which a court has considered the propriety of moving a court to enforce its contempt order when the initial contempt arose solely from failure to pay a debt. Section 362(a) would clearly enjoin any direct attempt to collect a dischargeable prepetition debt. The reasoning in *Hooker* and the language of section 362(a) suggest that the present case is not controlled by *Hooker* and *Dumas.* Certainly we should not allow a creditor to collect indirectly what it is precluded by 11 U.S.C. § 362(a) and 11 U.S.C. § 524(a) from collecting directly. The numerous cases holding that pursuit of

---

1. *See David v. Hooker, Ltd.,* 560 F.2d 412 (9th Cir.1977). The *Dumas* panel, in adopting the *Hooker* reasoning, recognized the similarity between the former stay provisions found in Bankruptcy Rule 401(a) under which *Hooker* was decided, and the current stay provision of 11 U.S.C. § 362. The contempt in *Hooker* arose from the failure to answer interrogatories. In finding that the contempt prosecution was not stayed, the court noted:

> [T]he basic purpose of Rule 401(a) is to protect the bankrupt and to relieve the courts from pointless and needless litigation.... Rule 401 reinforces and supplements Section 11a of the Bankruptcy Act wherein Congress

expressed its concern that the sweep of an order of discharge not be impaired and that a bankrupt not be obliged to litigate over debts which are dischargeable. The district court's order herein is not contrary to that purpose as it does not involve a determination of the ultimate obligation of the bankrupt nor does it represent a ploy by a creditor to harass him.

560 F.2d at 417–18 (citations omitted). *See also Martin-Trigona v. Gouletas,* 524 F.Supp. 10 (N.D.Ill.1980), citing *Hooker* to support the conclusion that contempt proceedings against a recalcitrant witness were not enjoined by 11 U.S.C. § 362.

prosecution on bad checks is a violation of the stay reflect that philosophy. *See In Re Johnson,* 16 B.R. 211 (Bkrtcy.M.D.Fla.1981); *In Re Lake,* 11 B.R. 202 (Bkrtcy.S.D.Ohio 1981); *In Re Taylor,* 16 B.R. 323, 8 B.C.D. 692 (Bkrtcy.D.Md.1981). Despite protestations to the contrary and statements of other purposes by Attorney Bosshard and her client, the only conceivable reasons for bringing the motion on September 27 were to harass the debtor and extract payments.

In *Dumas* the creditors could receive no monetary benefit from pursuing the contempt. The question of who invoked the jurisdiction of the state court could be separated from conduct specifically stayed. The protection of the state court was not in direct conflict with the protection of the debtor from collection efforts. In the careful balancing which must take place between the integrity of the state court and its orders and the protection of debtors under 11 U.S.C. § 362, the presence of a collection motive on the part of the party instigating the enforcement of a contempt order is a significant consideration. Because that collection motive invokes the stay against collection of 11 U.S.C. § 362 it precludes the creditor from taking steps to police the integrity of the court's order. The court must protect the integrity of its orders on its own motion or on the motion of a party without the collection motive.

▆▆▆▆ Upon the foregoing analysis I must find the Attorney Bosshard and Karen Hutchinson to be in contempt. The penalty for contempt must be measured by the costs to the party seeking the finding of contempt and the reasonable compensation for that party's loss. *In Re Bailey,* 20 B.R. 906, 913–14 (Bkrtcy.W.D.Wis.1982). In this case I will find that the reasonable costs incurred by the debtor are $225. The contempt found herein may be purged by the payment of that sum to the debtor's attorney for application against attorney's fees and costs in the amount of $200 and debtor's actual expenses in the amount of $25 within 10 days of the date of this order.